## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| ROGER FLEMING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) Case No.  08-cv-1174 |
| | ) |
| LIVINGSTON COUNTY, ILLINOIS, | ) |
| DEPUTY DAVID TURNER, and | ) |
| SHERIFF ROBERT MCCARTY, *in his* | ) |
| *official capacity*, | ) |
| | ) |
| Defendants. | ) |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendants Turner, McCarty, and Livingston County's Motion for Summary Judgment (Doc. 53), filed on September 30, 2010, along with a Statement of Facts (Doc. 55) and Memorandum in Support (Doc. 54).  On November 1, 2010, Plaintiff timely filed his Response to Defendants' Motion for Summary Judgment (Doc. 60), accompanied by twenty-six, separately filed, exhibits (Docs. 61-62; 64-67; and 69-88).[1]  On November 22, 2010, Defendants filed their Reply to Plaintiff's Response (Doc. 94), accompanied by a Response to

---

[1] Plaintiff filed a Motion for Leave to File the Remainder of his Exhibits After Consultation with Clerk on ECF Difficulties with Compliant Documents (Doc. 68) because of technical difficulties with the electronic filing system. The Court temporarily granted Plaintiff's Motion conditioned upon his conventional filing of all remaining exhibits by 12:00 noon on November 2, 2010 (Text Order of 11/2/2010). Plaintiff complied with this Order, and his Motion for Leave to File (Doc. 68) is therefore permanently GRANTED.

Plaintiff's Disputed Statement of Facts (Doc. 93).[2]  On the same date, Defendants filed a Motion to Strike Portions of Plaintiff's Response (Doc. 92)[3], to which Plaintiff filed a Response on December 17, 2010 (Doc. 99).  For the following reasons, Defendant's Motion to Strike (Doc. 92) is GRANTED, and Defendants' Motion for Summary Judgment (Doc. 53) is GRANTED.

## FACTUAL BACKGROUND[4]

On the early morning of August 4, 2006, Defendant Deputy Turner ("Turner") was on foot patrol in Flanagan, Illinois.  (Doc. 60 at 16).  Around 1:15 A.M., while Turner was walking eastbound on South Street, he observed Thomas Troxel exiting a house approximately one block ahead of where he was located.  (Doc. 60 at 17; Doc. 55 at 2).  Troxel approached Turner and told him that a man had broken into his house and that he believed the man had assaulted his two daughters.  (Doc. 60 at 17).  Troxel told Turner that he had chased the man from his home, and that he had fled north from his residence, across South Street, and through the yards ahead.  (Doc. 55 at 2).

Following this brief conversation with Troxel, Turner followed him to his home, which was approximately a half-block away.  (Doc. 60 at 33; Doc. 55 at 2).

---

[2] Although typically the movant's Statement of Facts and Response to the non-movant's Disputed Statement of Facts are included in the original Motion and Reply, respectively (CDIL LR 7.1(D)), the Court will not insist on form over substance and will therefore consider all of these separately filed documents as if they were one.

[3] This Motion to Strike (Doc. 92) is not based upon the procedure whereby Plaintiff filed his Response to Defendants' Motion for Summary Judgment, but to substantive aspects thereof.  Accordingly, this Motion to Strike has no bearing on the Court's granting of Plaintiff's Motion for Leave to File (Doc. 68).

[4] These background facts reflect the Court's determination of the undisputed facts, unless otherwise noted.  Facts that are omitted are immaterial; if an included fact is immaterial to the Court's determination, this will be noted.

There, Turner observed Troxel's two teenaged daughters, Haleigh, who was fifteen years old at the time, and Danielle, who was thirteen years old at the time, seated on the back porch. (Doc. 60 at 17; Doc. 55 at 2).[5] The girls provided Turner with a brief report of what had occurred. (Doc. 60 at 14-15, 17; Doc. 55 at 3). Turner learned that the girls were awakened when an unidentified man began fondling and/or rubbing their bodies. (Doc. 60 at 17; Doc. 55 at 3).[6] Haleigh described the man as male, white, and of average size and height. (Doc. 55 at 3). She also told Turner that the man was wearing camouflage shorts, a light colored t-shirt, and a dark baseball cap. (Doc. 60 at 14; Doc. 55 at 3).

After receiving this information, Turner left the home and ran back to his squad car, where he notified dispatch of a possible residential burglary. (Doc. 60 at 17; Doc. 55 at 3). He then drove northbound, the direction Troxel had indicated the assailant fled, before turning east one or two blocks later. (Doc. 60 at 17). Turner continued searching for the assailant by shining his spotlight on nearby grain elevators, at which point he heard dogs barking to the south and turned in that direction. (Doc. 60 at 17-18). He arrived at a mobile home approximately one half of a block north of the Troxel home and, because the porch light was lit, he began to knock on the door. (Doc. 60 at 18; Doc. 55 at 4).[7] Although there was no response, as he was leaving Turner observed a male subject walking a dog southbound in the

---

[5] The girls are now both over 18 years old, and therefore the Court will refer to them by their full names.

[6] Although the parties spend a great deal of time discussing what actually happened to the girls, the Court finds this material irrelevant to a determination of whether Turner had probable cause to arrest Plaintiff.

[7] This mobile home turned out to be Plaintiff's residence.

alley, between the mobile home and the Troxel house.  (Doc. 60 at 18; Doc. 55 at 4).[8] The subject, who turned out to be Plaintiff, was an average-sized white male, wearing camouflaged cargo shorts, a black baseball cap, and an oversized dark blue t-shirt.  (Doc. 60 at 18; Doc. 55 at 4).  Turner did not see any other individuals outside during his search.  (Doc. 55 at 4).

Turner circled the block and caught up with Plaintiff.  (Doc. 60 at 18; Doc. 55 at 5).  He identified himself as a police officer and asked Plaintiff to tie up his dog. (Doc. 60 at 18-19; Doc. 55 at 5).  After informing Plaintiff that he was investigating a recent break-in, Turner detained Plaintiff and called for back-up.  (Doc. 60 at 19; Doc. 55 at 5).   When back-up arrived, Turner returned to the Troxel residence and again spoke with Thomas Troxel and his two daughters.  (Doc. 60 at 19; Doc. 55 at 5).  The girls recounted their story to Turner in slightly greater detail, and Turner learned that only Haleigh saw the man, that she saw him from the back as he was leaving the residence, and that the only light that had been on in the residence was in the kitchen.  (Doc. 60 at 19; Doc. 55 at 6).  Still, Haleigh said that she knew the man to be of average size, and that he was wearing camouflaged cargo shorts and a dark baseball cap.  (Doc. 60 at 19; Doc. 55 at 6).  Based upon this information, and the fact that Plaintiff had been apprehended nearby shortly after the incident, Turner believed he had probable cause to arrest Plaintiff for burglary and sexual assault.  (Doc. 55 at 7).

---

[8] Curiously, Plaintiff disputes that Turner saw Fleming from the porch in response to Defendants' Statement of Facts (Doc. 60 at 7), but then includes the exact same fact in his own Statement of Additional Facts (Doc. 60 at 18).

Nevertheless, Turner decided to take two extra precautionary measures.[9] First, Turner phoned the Assistant State's Attorney Carey Luckman and explained the situation to him. (Doc. 55 at 7). Turner told Luckman the Troxels' story and that he had found Plaintiff a half a block away, matching Haleigh's description, soon afterwards. (Doc. 55 at 7).[10] Luckman told Troxel that there was probable cause for the arrest, and Turner proceeded to arrest Plaintiff on charges of home invasion and aggravated criminal sexual abuse. (Doc. 55 at 7). In addition, after Plaintiff had been arrested, Turner and several other officers had Haleigh observe Plaintiff from the back under a street light, and Haleigh told the officers that this was the same man that she had seen leaving her house shortly before. (Doc. 60 at 20-21; Doc. 55 at 8).

## PROCEDURAL HISTORY

On August 4, 2008, Plaintiff filed an Amended Complaint pursuant to 42 U.S.C. § 1983 and Illinois law, bringing claims against multiple defendants for alleged injuries arising out of his arrest on August 24, 2006, and subsequent criminal prosecution and detention. Since that time, all of Plaintiff's claims have been dismissed (either voluntarily or by Court Order),[11] except for 1) his claim against Defendant Turner for false arrest under § 1983, and 2) his claims against

---

[9] Although the Court does not find that either of these measures are relevant to the resolution of the instant motion, they are provided here for context.

[10] Plaintiff admits that Turner told this information to Luckman, but denies that what Turner told Luckman is true. (Doc. 60 at 9).

[11] On March 4, 2009, this Court dismissed several of Plaintiff's state law claims. (Doc. 40); and on August 25, 2010, Plaintiff stipulated to the dismissal of various Defendants (Doc. 48).

Defendants McCarty and Livingston County for indemnification under the Illinois Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/9-102.

On September 30, 2010, the remaining Defendants filed the instant Motion for Summary Judgment, arguing that Defendant Turner had probable cause to arrest Plaintiff or, if not, is at least entitled to qualified immunity because he had an objectively reasonable belief that probable cause existed. (Doc. 54 at 5-13). Moreover, because Plaintiff's claims against Defendants McCarty and Livingston County are derivative upon Defendant Turner's liability, Defendants argue that they are entitled to summary judgment on all of Plaintiff's remaining claims. (Doc. 54 at 13).

In his Response, Plaintiff argues that no probable cause could have existed, based in large part on the amount of time it must have taken Turner to conduct his search prior to arresting Plaintiff. Plaintiff bases this argument upon an independent investigation that he had a private investigator, Harmon Cook, perform. (Doc. 60 at 23-25). Cook allegedly mimicked the actions which Turner took between the time he first spoke to Thomas Troxel and the time he apprehended Plaintiff. (Doc. 60 at 24-25). According to Cook, these actions had to have taken approximately 6 minutes and 50 seconds, which is longer than the "two minutes" which Plaintiff states that Turner reported to Assistant State's Attorney Luckman when he sought a determination regarding the existence of probable cause. (Doc. 60 at 31). Before reaching the merits of this argument, however, the Court must determine whether the allegations pointed to by Plaintiff in his Response brief are properly before it.

## DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S RESPONSE

At the same time they filed their Reply brief, Defendants filed a Motion to Strike Portions of Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 92). In it, Defendants have moved to strike the portions of Plaintiff's Response which are based upon the investigation of Harmon Cook, including his calculation of the time it should have taken Turner to complete his search on the morning of August 4, 2006, and photographs of the relevant areas. (Doc. 92).[12] According to Defendants, Plaintiff did not disclose Mr. Cook or his investigation to them until October 28, 2010, which was eight weeks after the close of discovery, and four weeks after they had filed their Motion for Summary Judgment. (Doc. 92 at 4). Plaintiff did not disclose Mr. Cook as a witness in its Rule 26(a)(1) disclosures, did not supplement his Rule 26(a)(1) disclosures in response to interrogatories from Defendants, did not notify them of Mr. Cook's investigation until October 28, 2010, and did not disclose Mr. Cook's Declaration (Doc. 84) until he filed his Response brief. (Doc. 92 at 3-4). Therefore, Defendants seek to bar all evidence related to Mr. Cook's investigation pursuant to Federal Rule of Civil Procedure 37(c). (Doc. 92 at 4-5).

Plaintiff does not dispute that Mr. Cook was an undisclosed witness, but argues that because this failure was not in bad faith and could easily have been cured by Defendants, the evidence resulting from his investigation should not be barred, and should be considered by this Court when it rules on Defendants' Motion

---

[12] Specifically, Defendants seek to have the Court strike paragraphs 30-33, 53, and 55 of Plaintiff's Disputed Facts; paragraphs 66-68 of Part 5 of Plaintiff's Additional Material Facts; references to these paragraphs in Plaintiff's Memorandum, and Exhibits 84, and 86-88. (Doc. 92 at 5).

for Summary Judgment. (Doc. 99). In addition, Plaintiff claims that he himself was present throughout the course of Cook's investigation, and that therefore his Declaration (Doc. 99 Exh. 1) regarding the relevant re-creation and timing of Turner's search should cure any non-disclosure problem. (Doc. 99 at 3).

Federal Rule of Civil Procedure 37(c) provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." The Seventh Circuit has interpreted this provision to give some discretion to a district court judge, and has stated that the court should consider the following factors in determining whether exclusion is the appropriate remedy: "1) the prejudice or surprise to the party against whom the evidence is offered; 2) the ability of the party to cure the prejudice; 3) the likelihood of disruption to the trial; and 4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Here, Plaintiff is in clear violation of Federal Rule of Civil Procedure 26(a) and 26(e). Not only did Plaintiff fail to disclose Harmon Cook as an initial witness, he also did not supplement his disclosures when he knew that Cook would be serving as a fact witness. Accordingly, Defendants did not learn of Mr. Cook or his re-creation of Turner's investigation until *after* they filed their Motion for Summary Judgment. Defendants would certainly have been surprised by the production of new evidence after the close of discovery and their filing of a dispositive motion. Moreover, because Plaintiff did not disclose Cook or his investigation sooner,

Defendants were unable to cross-exam him regarding the precise details of his investigation, which may have revealed flaws in matters such as how he re-produced the speed and timing of Turner's actions, thereby prejudicing their defense. Because Plaintiff waited until the last minute to spring this investigation onto Defendants, and in doing so violated the discovery orders and rules of procedure of this Court, Defendant's Motion to Strike is GRANTED and paragraphs 30-33, 53, and 55 of Plaintiff's Disputed Facts, paragraphs 66-68 of Part 5 of Plaintiff's Additional Material Facts, references to these paragraphs in Plaintiff's Memorandum, and Exhibits 84, and 86-88 are STRICKEN pursuant to Federal Rule 37(c).

Still, the Court is cognizant of the fact that Defendants had the opportunity to ask this Court to re-open discovery following Cook's disclosure, at which time they may have deposed Cook regarding his investigation. While it does not believe that Defendants should have been required to take such efforts due to Plaintiff's inappropriate actions, out of an abundance of caution the Court will still consider all of the evidence in the record, including the evidence related to Cook's investigation, in determining Defendants' Motion for Summary Judgment.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now that the Court has determined what evidence it will consider in ruling on Defendants' Motion for Summary Judgment, it may consider the merits of the motion itself. Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law." FED. R. CIV. P. 56.  In ruling on a motion for summary judgment, the court must view the evidence on record in the light most favorable to the non-moving party.  *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).  All inferences drawn from the facts must be construed in favor of the non-movant; however, the court is not required to draw every conceivable inference from the record.  *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).  The court draws only reasonable inferences.  *Id.*

It is not the court's function to scour the record in search of evidence to defeat a motion for summary judgment.  Instead, the court relies on the non-moving party to identify the evidence which creates an issue of triable fact.  *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (*quoting Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001).  Further, mere conclusory allegations are not enough, the non-movant must "come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question."  *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997).  At the summary judgment stage, however, the "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts," such matters must be left for the jury.  *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007).

Here, Defendants argue that they are entitled to summary judgment on all of Plaintiff's claims because: 1) Turner had probable cause to arrest Plaintiff or, if not,

is at least entitled to qualified immunity because he had an objectively reasonable belief that probable cause existed; and 2) Plaintiff's claims against Defendants McCarty and Livingston County are derivative upon Turner's liability, so that if Turner is found to be entitled to summary judgment, they must be as well.  (Doc. 54 at 13).[13]   Because the Court finds that, based upon all of the evidence on the record, Defendant Turner is entitled to qualified immunity on Plaintiff's false arrest claim, Defendants' Motion for Summary Judgment must be granted.

## DEFENDANT TURNER'S QUALIFIED IMMUNITY

Qualified immunity protects public officials from liability for damages if their actions did not violate clearly established rights of which a reasonable person would have known.  *Catlin v. City of Wheaton*, 574 F.3d 361, 365 (7th Cir. 2009).  When the defense of qualified immunity is raised in response to a § 1983 unlawful arrest claim, the Court must "determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed."  *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998).  The second prong of this test is sometimes called "arguable probable cause," which "exists when 'a reasonable police officer in the same circumstances and . . . possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'"  *Id.* (*quoting Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997)).

---

[13] Plaintiff does not dispute Defendants' argument with regards to Defendants McCarty and Livingston County.   Therefore, the Court must only determine whether Turner is entitled to summary judgment on Plaintiff's false arrest claim.

"Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003). It exists if the facts and circumstances known to the arresting officer, of which he has reasonably trustworthy information, are sufficient to warrant a prudent person in believing the arrestee has committed a crime. *Id.* In cases where police officers mistakenly arrest one person, although they have probable cause to arrest another, the officers must reasonably believe that the person arrested is the person sought. *Catlin*, 574 F.3d at 365. Such reasonable belief may exist where the person arrested physically resembles the person sought and is observed in the precise area where the officers would expect to find such person. *Id.*

Here, the undisputed facts are that Turner was informed by Troxel at approximately 1:15 A.M. that a man had broken into his home, assaulted his two teenaged daughters, and fled to the north. One of the daughters told Turner that the man was white, of average-size, and was wearing camouflaged cargo shorts, a dark t-shirt, and a dark baseball cap. In less than seven minutes,[14] Turner came upon Plaintiff one half of a block north of the Troxel's home, wearing substantially similar clothing. No other people were outside at this time. Based upon this information, the Court cannot find that a reasonable police officer in Turner's position could not have reasonably believed that he had probable cause to arrest

---

[14] Because Defendants have moved for summary judgment, the Court accepts Plaintiff's allegations that Turner's investigation took at least six minutes and fifty seconds.

Plaintiff.[15] Not only did Plaintiff match the description provided by Haleigh Troxel, he was also the only person present in the vicinity surrounding the Troxel home, and within less than seven minutes of the reported disturbance.

While several facts, such as the potential discrepancy in t-shirt color and the fact that Plaintiff had a dog with him, make it difficult for the Court to definitively state that probable cause existed as a matter of law, the facts and circumstances known to Turner at the time were certainly sufficient that a reasonable officer could have mistakenly believed probable cause to exist. *See Humphrey*, 148 F.3d at 725. Accordingly, Defendant Turner is entitled to qualified immunity, and Defendants' Motion for Summary Judgment is GRANTED.

## CONCLUSION

For the foregoing reasons, Plaintiff 's Motion for Leave to File the Remainder of his Exhibits After Consultation with Clerk on ECF Difficulties with Compliant Documents (Doc. 68) is GRANTED, Defendant's Motion to Strike (Doc. 92) is GRANTED, and Defendants' Motion for Summary Judgment (Doc. 53) is GRANTED. The Clerk is DIRECTED TO ENTER JUDGMENT in favor of

---

[15] Plaintiff makes only two arguments in his Memorandum in Response to Defendants' Motion for Summary Judgment. First, Plaintiff argues that Turner provided fabricated evidence regarding the length of his investigation when he phoned Assistant U.S. Attorney Luckman for guidance on whether probable cause existed. However, because the Court believes that even without Luckman's conclusion that Turner had probable cause to arrest Plaintiff, a reasonable police officer in the same circumstances and possessing the same knowledge as Turner *could* have reasonably believed that probable cause existed in light of well-established law, this dispute does not bar summary judgment. Second, Plaintiff argues that the post-arrest show-up was defective. However, because this show-up occurred after Turner had arrested Plaintiff, it is not relevant here.

Defendants Turner, McCarty, and Livingston County, and against Plaintiff.  IT IS

SO ORDERED.



CASE TERMINATED.



Entered this <u>26th</u> day of April, 2011.

<div style="text-align: center; margin-left: 50%;">

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge

</div>